WOOD, SMITH, HENNING & BERMAN LLP
801 KIRKLAND AVE, SUITE 100
KIRKLAND, WASHINGTON 98033
TELEPHONE 206.204.6800 ♦ FAX 206.299.0400

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| HOPE ABRAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIR GROUP CREDIT UNION<br><br>Defendant. | Civil Action No. 2:26-cv-1889<br><br>**AMENDED NOTICE OF REMOVAL** |

**<u>AMENDED NOTICE OF REMOVAL</u>**

Defendant, ALASKA AIR GROUP CREDIT UNION (hereinafter "Alaska" or "Defendant"), by its undersigned attorneys, hereby submits this amended notice of removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, to the United States District Court for the Western District of Washington. As grounds for removal, Defendant states as follows:

**I. FACTS**

1. On or about April 21, 2026, Plaintiff HOPE ABRAMS filed a Complaint against Defendant in the Superior Court of the State of Washington in and for King County, bearing Case Number 26-2-13241-1 SEA. A true and correct copy of Plaintiff's Complaint is attached hereto as **"Exhibit A"** and a copy of the Summons issued to Defendant is attached hereto as **"Exhibit B."**

2. Defendant received service of Plaintiff's Complaint on April 30, 2026. A true and correct copy of the Service of Process on Defendant is attached hereto as **Exhibit "C."**

3. This matter stems from an alleged incident where Defendant suffered a data breach,

allegedly causing the information of Plaintiff, and other individuals, to be viewed by a threat actor.

4. Plaintiff is a resident of Las Vegas, Nevada. *See Exhibit A, ¶ 20.*

5. Defendant was formed in Washington, and Defendant's registered office address and principal address are 2800 S. 192nd Street, Suite 106, SeaTac, Washington, 98188. Therefore, Defendant is a citizen of Washington according to 28 U.S.C. § 1332(c)(1).

6. Upon information and belief, Co-Plaintiffs are domiciled in States other than Washington.

7. The Notice of Removal was filed within thirty (30) days of April 30, 2026, the date of filing and service upon Defendant. As such, removal is timely under 28 U.S.C. § 1446.

8. Removal to the United States District Court for the Western District of Washington is proper under 28 U.S.C. § 1441(a), as the Superior Court action was initiated by Plaintiffs in King County, Washington, which is located within the geographics boundaries of this District and Division.

**II. REMOVAL IS PROPER PURSUANT TO DIVERSITY**

9. 28 U.S.C. § 1332(a)(1) states: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States…"

10. The amount in controversy exceeds $75,000.00 as Plaintiffs allege that as a result of the accident, they have suffered the loss of the opportunity to control how their Private Information is used, the diminution in value of their Private Information, the compromise and continuing publication of their Private information, and out-of-pocket costs associated with the prevention, detection, recover, and remediation from identity theft or fraud. *See Exhibit A, ¶ 83.* Plaintiff also alleges the cost of credit-monitoring service for stolen PII can be worth up to $1,000.00 for each person. *See Exhibit A, ¶ 84.*

11. Based on preliminary results from data mining to determine how many individuals were affected by the alleged incident, Defendants believe that Plaintiff is one of approximately 10,000 individuals that were affected. Accordingly, the amount in controversy requirement is satisfied under 28 U.S.C. § 1332(a). Data mining is ongoing, but preliminary returns demonstrate

WOOD, SMITH, HENNING & BERMAN LLP
801 KIRKLAND AVE, SUITE 100
KIRKLAND, WASHINGTON 98033
TELEPHONE 206.204.6800 ♦ FAX 206.299.0400

diversity.

12. There is complete diversity in this case, and the amount in controversy requirement pursuant to 28 U.S.C. § 1446(c)(2) has been met.

13. As such, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**III. ALTERNATIVELY, REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1332(d)**

14. “Congress enacted [the Class Action Fairness Act 'CAFA'] in 2005 to expand subject matter jurisdiction in the federal courts over interstate class actions of national importance.” Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys., 928 F.3d 325, 329 (4th Cir. 2019) (cleaned up) (internal citation omitted). "To accomplish this purpose, it amended the diversity statute, 28 U.S.C. § 1332." Id.

15. "In general, removal pursuant to CAFA is permissible if the removing party can establish (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant; and (3) there are 100 or more plaintiff class members." Fernandes, 2025 WL 1008079, at * 3 (citing 28 U.S.C. § 1332(d)(2), (5)(B)).

16. "For purposes of diversity jurisdiction, the citizenship of a limited liability company…is determined by the citizenship of all of its members[.]" Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). Furthermore, “[u]nder CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as one class member has citizenship diverse from that of one defendant.” Broadway Grill, Inc. v. Visa Inc., 856 F.3d 1274 (9th Cir. 2017). In turn, where "the class description in plaintiff's [complaint] contains no limiting provision as to the citizenship of the class members… minimal diversity exists between the proposed class, which necessarily encompasses citizens of any state, and defendant[.]" Hicks v. Grimmway Enters., Inc., No. 22-CV-2038 JLS (DDL), 2023 WL 3319362, at *5 (S.D. Cal. May 9, 2023) (citing Broadway Grill, 856 F.3d at 1278; Stern v. RMG Sunset, Inc., No. 17-CV-1646 JLS (NLS), 2018 WL 2296787, at *7 (S.D. Cal. May 21, 2018)).

WOOD, SMITH, HENNING & BERMAN LLP
801 KIRKLAND AVE, SUITE 100
KIRKLAND, WASHINGTON 98033
TELEPHONE 206.204.6800 ♦ FAX 206.299.0400

17. Here, the amount in controversy plausibly exceeds the sum or value of $5,000,000 because as explained, Plaintiff, Co-Plaintiffs, and the Putative Class bring multiple causes of action, allege eight damages theories, and seek multiple variations of equitable and monetary relief.

18. Here the Putative Class plausibly exceeds 100 members, and therefore minimal diversity plausibly exists. Indeed, as explained, the Complaint alleges that Defendant serves many employees, retirees, and families. *See Exhibit A*, ¶ *24*. Notably, the definition of the Putative Class contains no limiting provision as to citizenship. *See Id*. Accordingly, removal is proper pursuant to CAFA. Furthermore, the CAFA exceptions do not apply because, while data mining is still ongoing, based upon current information and belief, greater than one-third of the putative class members are non-Washington residents, and Plaintiff is a resident of Nevada, not Washington.

## IV. CONCLUSION

19. Based upon the grounds set forth above, removal is proper pursuant to 28 U.S.C. §§ 1331,1332, 1446, and 1453.

20. Undersigned counsel for Defendant certifies that it will file a copy of the Notice of Removal with the Clerk of Superior Court for King County, Washington and will give notice of the same to Plaintiffs' counsel at their firms' addresses.

WHEREFORE, Defendant prays this matter be removed to the United States District Court for the Western District of Washington and for a stay of the Superior Court action.

DATED this 2nd day of June, 2026

Wood, Smith, Henning & Berman LLP



Timothy D Shea, WSBA 39631
801 Kirkland Ave, Suite 100
Kirkland, Washington 98033
Phone 206.204.6800
tshea@wshblaw.com

Attorneys for ALASKA AIR GROUP CREDIT UNION

WOOD, SMITH, HENNING & BERMAN LLP
801 KIRKLAND AVE, SUITE 100
KIRKLAND, WASHINGTON 98033
TELEPHONE 206.204.6800 ♦ FAX 206.299.0400

WOOD, SMITH, HENNING & BERMAN LLP
801 KIRKLAND AVE, SUITE 100
KIRKLAND, WASHINGTON 98033
TELEPHONE 206.204.6800 ♦ FAX 206.299.0400

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is a citizen of the United States and a resident of the State of Washington, living in said state, over the age of eighteen (18) years, not a party to, and competent to be a witness in this action; that on this date the undersigned caused to be served on counsel of record as shown below, via e-mail, a true and correct copy of the foregoing document.

**ATTORNEY FOR PLAINTIFF:**

Kaleigh Boyd, WSBA #52684
McNaul Ebel, PLLC
600 University Street, Suite 2700
Seattle, WA 98101
kboyd@mcnaul.com

John Nelson- Pro Hac
280 S. Beverly Drive- Penthouse Suite
Beverly Hills, CA 90212
jnelson@milberg.com

[X] VIA EMAIL
[X] VIA CM/ECF

DATED this 2nd day of June 2026.

Brittany Noren, Legal Assistant
bnoren@wshblaw.com

EXHIBIT A

FILED
2026 APR 21 04:22 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-13241-1 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| HOPE ABRAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIR GROUP CREDIT UNION,<br><br>Defendant. | No.<br><br>SUMMONS |

TO: THE ABOVE-NAMED DEFENDANT:

A lawsuit has been started against you in the above-entitled court by HOPE ABRAMS, the plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons if served upon you within the State of Washington or 60 days if served upon you outside the State of Washington, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the plaintiff is entitled to what they ask for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

Dated: April 21, 2026

Respectfully,

McNAUL EBEL PLLC

*/s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA No. 52684
600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-1816
Fax: (206) 624-5128
Email: kboyd@mcnaul.com

*/s/ John J. Nelson*
John J. Nelson (*pro hac vice* forthcoming)
MILBERG, PLLC
280 S. Beverly Drive – Penthouse Suite
Beverly Hills, CA 90212
(858) 209-6941
jnelson@milberg.com

*Attorneys for Plaintiff and the Proposed Class*

EXHIBIT B

FILED
2026 APR 21 04:22 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-13241-1 SEA

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| HOPE ABRAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIR GROUP CREDIT UNION,<br><br>Defendant. | No.<br><br>COMPLAINT ¯ CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff Hope Abrams (`Plaintiff_), on behalf of herself, and all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Alaska Air Group Credit Union (`Defendant_). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## I. INTRODUCTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information (`PII_[1] or `Private Information_) that was impacted in a data breach (the `Data Breach_ or the `Breach_).

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual˜s identity, either alone or when combined with other



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

2. Plaintiff˜s claims arise from Defendant˜s failure to properly secure and safeguard Private Information that was entrusted to it and its accompanying responsibility to store and transfer that information.

3. Defendant is a not-for-profit financial cooperative serving employees, retirees, and families of Alaska Air Group.

4. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5. On or about March 5, 2026, Defendant experienced a Data Breach.[2] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[3]

6. Defendant˜s investigation determined that the unauthorized actors accessed its service provider˜s systems also may have accessed and copied certain files from Defendant˜s systems.[4]

7. The following types of Private Information were compromised as a result of the Data Breach: name, account number, date of birth, driver˜s license number, passport number, Social Security number, and tax identification number.[5]

8. On or around April 16, 2026, Defendant issued a notice of public disclosure about the Data Breach.

---

personal or identifying information. 2 C.F.R. 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] https://oag.ca.gov/system/files/AAGCU%20-%20Notice%20of%20Data%20Incident%20%28CA%29_0.pdf (last visited April 20, 2026).

[3] Id.

[4] Id.

[5] Id.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

9. Defendant failed to take precautions designed to keep individuals˘ Private Information secure.

10. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

11. The Private Information compromised in the Data Breach contained highly sensitive data, representing a gold mine for data thieves. The data included, but is not limited to, Social Security numbers and sensitive information that Defendant collected and maintained on behalf of Plaintiff and Class Members.

12. Armed with the Private Information accessed in the Data Breach (and a head start), data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members˘ names, taking out loans in Class Members˘ names, using Class Members˘ names to obtain services, using Class Members˘ information to obtain government benefits, filing fraudulent tax returns using Class Members˘ information, and giving false information to police during an arrest.

13. Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

14. Plaintiff brings this class action lawsuit to address Defendant˘s inadequate safeguarding of Class Members˘ Private Information that it collected and maintained, and its failure to provide timely and adequate notice to affected individuals, including



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Plaintiff and Class Members, of the Breach and the types of information unlawfully accessed.

15. The potential for improper disclosure and theft of Plaintiff and Class Members˜ Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

16. Upon information and belief, Defendant failed to properly monitor and implement security practices with regard to the computer network and systems that housed the Private Information. Had Defendant properly monitored its IT Network, it would have discovered the Breach sooner.

17. Plaintiff and Class Members˜ identities are now at risk because of Defendant˜s negligent conduct, as the Private Information that Defendant collected and maintained is now in the hands of data thieves and other unauthorized third parties.

18. Plaintiff seeks to remedy these harms on behalf of herself, and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

19. Accordingly, Plaintiff, on behalf of herself and the Class, assert claims of negligence, unjust enrichment, breach of implied contract, breach of fiduciary duty, and violation of the Washington Consumer Protection Act, RCW 19.86.

## II. PARTIES

Plaintiff

20. Plaintiff is a citizen and resident of Las Vegas, Nevada.

Defendant

21. Defendant is a financial cooperative that maintains its principal place of business at 2800 S 192nd Street, Suite 106, SeaTac, Washington, 98188.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## III. JURISDICTION AND VENUE

22. The Superior Court of King County has personal jurisdiction over Defendant because it conducts substantial business in King County, Washington, and maintains its principal office within the county.

23. Venue is proper in King County Superior Court under RCW 4.12.025 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in King County.

## IV. FACTUAL ALLEGATIONS

### A. Background on Defendant

24. Defendant is a not-for-profit financial cooperative serving employees, retirees, and families of Alaska Air Group

25. As a condition of doing business, Defendant requires that individuals entrust it with highly sensitive personal information. In the ordinary course of receiving services from Defendant, Plaintiff and Class Members were required to provide their Private Information to Defendant.

26. Upon information and belief, Defendant made promises and representations to individuals', including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

27. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

28. As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

B. The Data Breach

29. On or about March 5, 2026, Defendant experienced a Data Breach.[6] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[7]

30. Defendant's investigation determined that the unauthorized actors accessed its service provider's systems also may have accessed and copied certain files from Defendant's systems.[8]

31. The following types of Private Information were compromised as a result of the Data Breach: name, account number, date of birth, driver's license number, passport number, Social Security number, and tax identification number.[9]

32. On or around April 16, 2026, Defendant issued a notice of public disclosure about the Data Breach.

33. Defendant had obligations created by the FTC Act, contract, common law, and industry standards to keep Plaintiff and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

34. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

35. The Data Breach resulted in unauthorized third parties accessing and acquiring files containing unencrypted Private Information of Plaintiff and Class

---

[6] Id.
[7] Id.
[8] Id.
[9] Id.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Members. Plaintiff and Class Members˘ Private Information was accessed and stolen in the Data Breach.

36. Upon information and belief, Plaintiff˘s Private Information, and that of Class Members, was subsequently published on the dark web following the Data Breach, as that is the modus operandi of cybercriminals that commit cyber-attacks of this type.

37. Defendant failed to take precautions designed to keep individuals˘ Private Information secure.

38. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

C. Defendant Acquires, Collects, and Stores Plaintiff˘s and Class Members˘ Private Information

39. As a condition to obtain services from Defendant, Plaintiff and Class members were required to give their sensitive and confidential Private Information to Defendant.

40. Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff˘s and Class members˘ Private Information, Defendant would be unable to perform its services.

41. At all relevant times, Defendant knew it was storing sensitive Private Information and that, as a result, its system would be an attractive target for cybercriminals.

42. Defendant also knew that a breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

43. Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class members.

44. Upon information and belief, Defendant made promises to Plaintiff and Class members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

45. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

D. Defendant Knew or Should Have Known of the Risk of a Cyberattack Because Entities in Possession of Private Information Are Particularly Suspectable.

46. Data thieves regularly target entities like Defendant due to the highly sensitive information that they maintain. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

47. Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities like Defendant that collect and store Private Information and other sensitive information, preceding the date of the Data Breach.

48. In light of recent high profile data breaches at other industry-leading companies, including, e.g., Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

49. In 2024, a 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records´ a 211% increase year-over-year.[10]

50. The 330 breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[11]

51. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class members from being compromised.

52. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant˜s server(s), and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

53. The injuries to Plaintiff and Class members were directly and proximately caused by Defendant˜s failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members.

54. The ramifications of Defendant˜s failure to keep secure the Private Information of Plaintiff and Class members are long-lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years.

55. As an entity in possession of individuals Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on

[10] 2024 Data Breach Annual Report, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited April 20, 2026).

[11] Id.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Plaintiff and Class members because of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

E. Defendant Fails to Comply with FTC Guidelines

56. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

57. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network˜s vulnerabilities; and implement policies to correct any security problems.[12]

58. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[13]

59. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[12] Protecting Personal Information: A Guide for Business, FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited April 20, 2026).

[13] Id.



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

60. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act (`FTCA_), 15 U.S.C. í 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61. These FTC enforcement actions include actions against entities that fail to adequately protect individuals˜ data, like Defendant.

62. Section 5 of the FTC Act, 15 U.S.C. í 45, prohibits `unfair . . . practices in or affecting commerce,_ including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant˜s duty in this regard.

63. Defendant failed to properly implement basic data security practices.

64. Defendant˜s failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals˜ Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. í 45.

65. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of Plaintiff and Class Members; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant˜s conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

F. Defendant Fails to Comply with Industry Standards

66. As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

67. Several best practices have been identified that a minimum should be implemented by entities in possession of PII, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

68. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

69. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

70. These foregoing frameworks are existing and applicable industry standards for a business to provide adequate data security for individuals sensitive



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

information. Upon information and belief, Defendant failed to comply with at least one-- or all--of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

G. Defendant Owed Plaintiff and Class Members a Duty to Safeguard their Private Information

71. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class members.

72. Defendant owed a duty to Plaintiff and Class members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information

73. Defendant owed a duty to Plaintiff and Class members to implement processes that would detect a compromise of Private Information in a timely manner.

74. Defendant owed a duty to Plaintiff and Class members to act upon data security warnings and alerts in a timely fashion.

75. Defendant owed a duty to Plaintiff and Class members to disclose in a timely and accurate manner when and how the Data Breach occurred.

76. Defendant owed a duty of care to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## H. The Data Breach Increases Plaintiff's and Class Members' Risk of Identity Theft

77. Upon information and belief, Plaintiff and Class Members Private Information will be disseminated and sold to criminals on the dark web, as that is the modus operandi of hackers.

78. Unencrypted Private Information may also fall into the hands of companies that will use the detailed data for targeted marketing without the approval of Plaintiff and Class members.

79. Simply put, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members because of the Data Breach.

80. Cyberattacks and data breaches at companies like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

81. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

82. Plaintiff's and Class members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class members and to profit from their misfortune.

83. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Private Information is



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

used;

b. The diminution in value of their Private Information;

c. The compromise and continuing publication of their Private Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Private Information; and

h. The continued risk to their Private Information, which remains in Defendant˘s possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in its possession.

84. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

85. The value of Plaintiff˘s and the Class˘s Private Information on the black market is considerable. Stolen Private Information trades on the black market for years, and criminals frequently post stolen Private Information openly and directly on various `dark web_ internet websites, making the information publicly available, for a substantial fee of course.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

86. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

87. One such example of criminals using Private Information for profit is the development of `Fullz_ packages.

88. Cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as `Fullz_ packages.

89. The development of `Fullz_ packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class˜s phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff˜s and the Class˜s stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

90. Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. According to Experian, one of the largest credit reporting companies in the world, `[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it_ to among other things: open a new credit card or loan, change a billing address so the victim no longer receives bills, open new utilities, obtain a mobile phone, open a bank account and write bad



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

checks, use a debit card number to withdraw funds, obtain a new driver˜s license or ID, and/or use the victim˜s information in the event of arrest or court action.

91. Identity thieves can also use the victim˜s name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim˜s information. In addition, identity thieves may obtain a job using the victim˜s Social Security number, and/or rent a house or receive medical services in the victim˜s name.

92. The Social Security Administration has similarly warned that identity thieves can use an individual˜s Social Security number to apply for additional credit lines.[14] Such fraud may go undetected until debt collection calls commence months, or even years later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[15] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual˜s employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual˜s authentic tax return is rejected because one was already filed on their behalf.

93. Further, an individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as `[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number. _[16]

94. This was a financially motivated Data Breach, as the only reason the cybercriminals go through the trouble of running a targeted cyberattack against

---

[14] Id.
[15] Id. at 4.
[16] Brian Naylor, Victims of Social Security Number Theft Find It˜s Hard to Bounce Back, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

companies like Defendant is to get information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, `[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market._

95. Indeed, a Social Security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[17] `[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web._[18]

96. These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to Private Information, they will use it.[19]

97. Approximately 21% of victims did not realize their identity had been compromised until more than two years after it happened.[20] This gives thieves ample time to seek multiple treatments under the victim˜s name.

98. Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[21]

99. Defendant˜s failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff˜s and the Class˜s injury by depriving them of the

---

[17] Michael Kan, Here˜s How Much Your Identity Goes for on the Dark Web, (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[18] Dark Web Monitoring: What You Should Know, Consumer Federation of America (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[19] Id.

[20] See Medical ID Theft Checklist, https://www.identityforce.com/blog/medical-id-theft-checklist-2

[21] Guide for Assisting Identity Theft Victims, FED. TRADE COMM˜N, 4 (Sept. 2013), https://www.hiresafe.com/wp-content/uploads/2019/10/Guide-for-Assisting-ID-Theft-Victims.pdf.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

I. Loss of Time to Mitigate the Risk of Identity Theft and Fraud

100. As a result of the recognized risk of identity theft, when a data breach occurs and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm.

101. Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class members must monitor their financial accounts for many years to mitigate the risk of identity theft.

102. Plaintiff and Class members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

103. Plaintiff`s mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches (`GAO Report_) in which it noted that victims of identity theft will face `substantial costs and time to repair the damage to their good name and credit record._[22]

104. Plaintiff`s mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert

[22] See United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

(and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[23]

105. And for those Class members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches (`GAO Report_) in which it noted that victims of identity theft will face `substantial costs and time to repair the damage to their good name and credit record._

J. Diminution of Value of Private Information

106. Private Information is valuable property.[24] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

107. The Private Information stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information stolen in the Data Breach is difficult, if not impossible, to change.

108. This kind of data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal, explained,

---

[23] See Federal Trade Commission, Identity Theft.gov, https://www.identitytheft.gov/Steps

[24] See `Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown,_ at 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (`GAO Report_).



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

`Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market._[25]

109. Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[26]

110. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[27] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[28] [29]

111. As a result of the Data Breach, Plaintiff`s and Class members˜ Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

112. The fraudulent activity resulting from the Data Breach may not come to light for years.

---

[25] Tim Greene, Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers, NETWORK WORLD (Feb. 6, 2015), https://www.itworldnetworkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html

[26] See, e.g., John T. Soma, et al, Corporate Privacy Trend: The `Value_ of Personally Identifiable Information (`PII_) Equals the `Value_ of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3˜4 (2009) (`PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets._) (citations omitted).

[27] See Ashiq Ja, Hackers Selling Healthcare Data in the Black Market, InfoSec (July 27, 2015), https://www.infosecinstitute.com/resources/healthcare-information-security/hackers-selling-healthcare-data-in-the-black-market/

[28] https://www.latimes.com/business/story/2019-11-05/column-data-brokers

[29] https://datacoup.com/



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

113. Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

114. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant˘s network, amounting to thousands of individuals˘ detailed Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

115. The injuries to Plaintiff and Class members were directly and proximately caused by Defendant˘s failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members.

K. The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary

116. Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of Private Information involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes´ e.g., opening bank accounts in the victims˘ names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

117. Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that her or her Private Information was used to file for unemployment benefits until law enforcement notifies the individual˘s employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual˘s authentic tax return is rejected.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

118. Consequently, Plaintiff and Class members are at an increased risk of fraud and identity theft for many years into the future.

119. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member. This is a reasonable and necessary cost to monitor and protect Class members from the risk of identity theft resulting from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class members would not need to bear, but for Defendant's failure to safeguard their Private Information.

L. Loss of the Benefit of the Bargain

120. Furthermore, Defendant's poor data security deprived Plaintiff and Class members of the benefit of their bargain. When agreeing to pay Defendant for the provision of its services, Plaintiff and other reasonable individuals understood and expected that they were, in part, paying for the service and necessary data security to protect the Private Information when, in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

M. Plaintiff's Experience

121. Plaintiff is a member of Defendant.

122. As a condition of obtaining services from Defendant, Plaintiff was required to provide Defendant with her Private Information.

123. Defendant was in possession of Plaintiff's Private Information before, during, and after the Data Breach.

124. Plaintiff reasonably understood and expected that Defendant would safeguard her Private Information and timely and adequately notify her in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

position, to maintain her Private Information if she believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

125. Plaintiff greatly values her privacy and Private Information and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

126. Plaintiff stores any and all documents containing Private Information in a secure location and destroys any documents she receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise her identity and credit card accounts.

127. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

128. Upon information and belief, as a result of the Data Breach, Plaintiff's Private Information was published on the dark web.

129. As a result of the Data Breach, Plaintiff has spent several hours researching the Data Breach, reviewing her bank accounts, monitoring her credit report, changing her passwords and other necessary mitigation efforts. This is valuable time that Plaintiff would have spent on other activities, including but not limited to work and/or recreation.

130. As a consequence of and following the Data Breach, Plaintiff has experienced a significant increase in spam calls, text messages, and emails, evidencing misuse of her Private Information.

131. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress.

132. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition,



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

133. Plaintiff has a continuing interest in ensuring that her Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

134. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive Private Information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff and (g) other economic and non-economic harm.

## V. CLASS ALLEGATIONS

135. Plaintiff brings this class action, individually and on behalf of the following Nationwide Class:

> Nationwide Class: All individuals whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the `Class_).

136. Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

137. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

138. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

139. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Upon information and belief, Plaintiff estimates that the Class is comprised of thousands of members, if not more. The Class is sufficiently numerous to warrant certification.

140. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

141. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

142. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

143. Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c. Whether Defendant's storage of Plaintiff and Class Member's Private Information was done in a negligent manner;

d. Whether Defendant had a duty to protect and safeguard Plaintiff and Class Members' Private Information;

e. Whether Defendant's conduct was negligent;

f. Whether Defendant's conduct violated Plaintiff and Class Members' privacy;

g. Whether Defendant took sufficient steps to individuals' Private Information;

h. Whether Defendant was unjustly enriched; and

i. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

144. Information concerning Defendant's policies is available from Defendant's records and Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

145. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

146. Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

COUNT I
NEGLIGENCE
(On behalf of Plaintiff and the Nationwide Class)

147. Plaintiff restates and realleges all of the allegations stated in paragraphs 1– 146, as if fully set forth herein.

148. Defendant knowingly collected, possessed, and maintained Plaintiff and Class Members' Private Information, and therefore had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

149. Defendant's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

150. Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

151. Defendant owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendant's duties included, but were not limited to, the following:



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect the Private Information in its possession it using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

152. Defendant˜s duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. í 45, which prohibits `unfair . . . practices in or affecting commerce,_ including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

153. Defendant˜s duty also arose because Defendant was bound by industry standards to protect the confidential Private Information entrusted to it.

154. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

155. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and Class Members˘ Private Information within Defendant˘s possession.

156. Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

157. Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

158. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff and Class Members˘ Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members˘ Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members˘ Private Information;

e. Failing to comply with the FTCA;

f. Failing to detect in a timely manner that Class Members˘ Private Information had been compromised; and



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

159. Defendant acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

160. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff and Class Members˜ willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

161. Defendant˜s breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members˜ Private Information to be compromised and exfiltrated, as alleged herein.

162. As a result of Defendant˜s ongoing failure to notify Plaintiff and Class Members regarding the Data Breach, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

163. Defendant˜s breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and loss of time and money to monitor their accounts for fraud.

164. As a result of Defendant˜s negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

165. Defendant also had independent duties under state law that required it to reasonably safeguard Plaintiff and Class Members˜ Private Information and promptly notify them about the Data Breach.

166. As a direct and proximate result of Defendant˜s negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

167. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

168. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

169. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, inter alia, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

COUNT II
BREACH OF IMPLIED CONTRACT
(On Behalf of Plaintiff and the Class)

170. Plaintiff restates and realleges all of the allegations stated in paragraphs 1¯146, as if fully set forth herein.

171. Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of obtaining services from Defendant. Plaintiff and Class Members would not have provided their Private Information to Defendant had they known that Defendant˜s data security practices were substandard.

172. Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant˜s regular business practices. Plaintiff and Class



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Members accepted Defendant˜s offers and provided their Private Information to Defendant.

173. Defendant accepted possession of Plaintiff and Class Members˜ Private Information for the purpose of providing services to Plaintiff and Class Members.

174. Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

175. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant˜s data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

176. Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter˜s obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

177. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

178. On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relates to the Data Breach.

179. On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

180. Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

181. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

182. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

183. Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

184. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

185. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

provide accurate notice to them that personal information was compromised as a result of the Data Breach.

186. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

187. As a direct and proximate result of Defendant˜s breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant˜s possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

188. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

189. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## COUNT III
## UNJUST ENRICHMENT
## (On behalf of Plaintiff and the Nationwide Class)

190. Plaintiff restates and realleges all of the allegations stated in paragraphs 1‑146, as if fully set forth herein.

191. This Count is pleaded in the alternative to Count II above.

192. Plaintiff and Class Members conferred a benefit on Defendant by providing their Private Information to Defendant. Moreover, upon information and belief, Plaintiff alleges that payments made to Defendant included payment for cybersecurity protection to protect Plaintiff and Class Members' Private Information, and that those cybersecurity costs were passed on to Plaintiff and Class Members in the form of elevated prices charged by Defendant for its services. Plaintiff and Class Members did not receive such protection.

193. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiff and Class Members.

194. As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

195. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received indirectly from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

196. Defendant knew that Plaintiff and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Plaintiff and Class Members˜ Private Information and prevented the Data Breach.

197. If Plaintiff and Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

198. Due to Defendant˜s conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant˜s to be permitted to retain the benefit of its wrongful conduct.

199. As a direct and proximate result of Defendant˜s conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant˜s possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

200. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits,



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

201. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

COUNT IV
BREACH OF FIDUCIARY DUTY
(On Behalf of Plaintiff and the Nationwide Class)

202. Plaintiff restates and realleges all of the allegations stated in paragraphs 1‑147, as if fully set forth herein.

203. In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became a guardian of Plaintiff and Class Members' Private Information (including highly sensitive, confidential, personal, and other Private Information) Defendant was a fiduciary, created by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its clients, including Plaintiff and Class Members. This benefit included (1) the safeguarding of Plaintiff and Class Members' Private Information; (2) timely notifying Plaintiff and Class Members of the Data Breach; and (3) maintaining complete and accurate records of what and where Defendant's clients' Private Information was and is stored.

204. Defendant had a fiduciary duty to act for the benefit of Plaintiff and the Class upon matters within the scope of its clients' relationship, in particular to keep the Private Information secure.

205. Upon information and belief, Defendant breached its fiduciary duties to Plaintiff and the Class by failing to protect their Private Information.

206. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer the harms



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

and injuries alleged herein, as well as anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

COUNT V
VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
RCWA í í 19.86.010, et seq
(On Behalf of Plaintiff and the Nationwide Class)

207. Plaintiff restates and realleges all of the allegations stated in paragraphs 1¯146, as if fully set forth herein.

208. Defendant is a `person,_ as defined by RCW 19.86.010(1).

209. Defendant advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by RCW 19.86.010(2).

210. Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020, including:

a. By failing to implement and maintain reasonable security and privacy measures to protect Plaintiff˜s and Class Members˜ Private Information, which was a direct and proximate cause of the data breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the data breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff˜s and Class Members˜ Private Information;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff˜s and Class Members˜ Private Information, including by implementing and maintaining reasonable security measures;



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members˜ Private Information;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff˜s and Class Members˜ Private Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff˜s and Class Members˜ Private Information.

211. Defendant˜s representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant˜s data security and ability to protect the confidentiality of customer˜s Private Information.

212. Defendant˜s conduct is injurious to the public interest, including the thousands of Washingtonians affected by the Data Breach.

213. As a direct and proximate result of Defendant˜s unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and their Private Information˜s loss of value.

214. Plaintiffs and Class Members accordingly seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys˜ fees and costs.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action under CR 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is the proper representative of the Nationwide Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding her appropriate monetary relief, including actual damages, statutory damages, treble damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys˜ fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Dated: April 21, 2026

Respectfully,

MCNAUL EBEL PLLC

/s/ Kaleigh N. Boyd
Kaleigh N. Boyd, WSBA No. 52684
600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-1816
Fax: (206) 624-5128
Email: kboyd@mcnaul.com

/s/ John J. Nelson
John J. Nelson (pro hac vice forthcoming)
MILBERG, PLLC
280 S. Beverly Drive – Penthouse Suite
Beverly Hills, CA 90212
(858) 209-6941
jnelson@milberg.com

Attorneys for Plaintiff and the Proposed Class

EXHIBIT C

# HALO MESSENGERS

HALOMESSENGERS.COM

SEATTLE AREA
(206) 300-9564
halomessengers@yahoo.com

| LAST DAY Date/Time | Firm Name: McNaul Ebel PLLC | Phone: (206) 467-1816 | Attorney: Kaleigh Boyd |
|---|---|---|---|
| 4/30/26 by 4:30 pm | Address: 600 University Street, Suite 2700 \| Seattle, WA 98101 | | Secretary: Ashley |
| | Case: Abrams v Alaska Air Group Credit Union | | |
| | Cause No.: 26-2-13241-1 SEA | Client Matter Number: 5437.001 | Date: 4/23/26 |

Documents
Complaint, Summons, Order Setting Case Schedule

☐ Signature Required On Documents ☒ Return Conformed Slip Only ☐ Return Conformed Copy ☐ Conform Original Do Not File

Other Instructions
Please ask for an officer to accept service and please indicate that request in your affidavit.

Alaska Air Group Credit Union
2800 S 192nd St #106
SeaTac, WA 98188

| FILING | County | Superior Court | District Court (Indicate District) | Auditor | Appeals Court I-Sea | Appeals Court II-Tac | Federal Court Civil | Federal Court Bnkrpt | Sea | Tac | State Supreme | Sec State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

X Dan Hein

X President/CEO